

# THE ATTORNEY GENERAL
## OF TEXAS

January 13, 1988

**JIM MATTOX**
**ATTORNEY GENERAL**

Mr. Lawrence F. Alwin, CPA
State Auditor
P. O. Box 12067
Austin, Texas    78711-2067

Opinion No. JM-843

Re:  Competitive bidding re-
quirements for   the purchase
of school buses (RQ-1075)

Dear Mr. Alwin:

Your letter requesting  an opinion  from this  office draws into  question the  procedures  employed by  certain school districts  for  the purchase  of  school buses  and related equipment.

The  information  you  have  provided   reveals  that several school districts  participating in the  Foundation School Fund program regularly submit purchase requests for school buses,  bus  bodies and  bus  chassis that  contain specifications  which  are  structured  so  that   only  a particular model or manufacturer meets the specifications. The purchases are requested pursuant to section 3.09(b) of the State  Purchasing and  General  Services Act,  article 601b, V.T.C.S., which prescribes procedures to be followed when it appears that the "conditions and specifications of a purchase request have  been drawn to describe  a product which is proprietary  to one  vendor" and  do not  include language  which  permits  an  equivalent  product   to  be supplied.   Section 3.03 of article 601b, however, requires the State Purchasing and General Services  Commission [the commission] to purchase these items in the manner provided by subchapter F of chapter 21 of the Texas Education Code. Subchapter F  requires,  among  other  things,  that  such purchases be made on the basis of competitive bids.   Educ. Code §21.165(b).   Your  letter expresses concern  that the purchase of  school  buses  pursuant to  section  3.09  of article 601b avoids  the competitive bidding  requirements of section 21.165 of  the Education Code.   Hence,  you ask whether the  provisions  of  article  601b,  V.T.C.S.,  or provisions of the  Education Code  govern the purchase  of school buses and related equipment.  As  this opinion will explain, we  conclude that  the  purchasing provisions  of article 601b were  not intended to  apply to purchases  of school buses and  related equipment.   Such purchases  are governed by the Education Code.

## I.

Article 601b was enacted by the 66th Legislature in 1979. Acts 1979, 66th Leg., ch. 773, at 1908. It is the product of an effort to organize and unify the numerous statutes relating to state purchasing and the duties of the Board of Control. See Bill Analysis to H.B. No. 1673, 66th Leg. (1979), on file in Legislative Reference Library. The act abolished the Board of Control and established in its stead the State Purchasing and General Services Commission. Id. See also V.T.C.S. art. 601b, §§2.01; 99.01; 99.02. Article 3 of the statute governs purchasing by and for state agencies. Among its several duties, the commission is required to "purchase, lease, rent, or otherwise acquire all supplies, materials, services, and equipment for all state agencies" except for certain materials and services acquired for libraries operated by institutions of higher education. V.T.C.S. art. 601b, §3.01(a). The commission is also given the responsibility for purchasing certain motor vehicles for certain school districts:

> The commission shall purchase all motor vehicles used for transporting school children, including buses, bus chassis, and bus bodies, tires, and tubes, for school districts participating in the Foundation School Program as provided by Subchapter F, Chapter 21, Texas Education Code.

Id. §3.03. See also Educ. Code §§21.161; 21.180(a).

Buses and bus bodies, chassis, tires, and tubes may be purchased by school districts without the approval of the commission if the funds used to purchase the items are provided by gift or profits from athletic contests or school enterprises not supported by tax funds or by government grant or appropriation. Educ. Code §21.164. Purchases made through the commission are governed by the following provision:

> (a) The purchase of motor vehicles (including buses, bus chassis, bus bodies, tires, and tubes) by the Board of Control shall be made in compliance with the provisions of this section.
>
> (b) The purchase must be made on the basis of competitive bids submitted under

<u>such rules and regulations as may be made by the Board of Control</u>.

(c) The purchase must be authorized by a requisition, which may be submitted by either a board of county school trustees or the board of trustees of a school district. The requisition must include a general description of the article or articles desired, as well as any other applicable matter specified in this section.

(d) If the requisition is for the purchase of a motor vehicle, bus, bus body, or bus chassis, it must be approved by either the county school board when funded under law or the board of trustees of a school district and by the commissioner of education.

(e) If the requisition is for the purchase of tires and tubes, it must be approved by the county superintendent or the chief administrative officer of a school district.

(f) If the requisition is for the purchase of special equipment required, because of climatic or road conditions, to guarantee adequate safety and comfort of school children, the requisition must describe the special conditions and require-ments so that the Board of Control may purchase equipment which it determines to be adapted or designed for the conditions or requirements.

(g) The requisition must contain a certification as to the funds that will be available to pay for the article or articles requisitioned. (Emphasis added.)

Educ. Code §21.165. The commission and the State Board of Education are jointly authorized to adopt and enforce regulations governing the design, construction, and operation of school buses operated by or for school districts, and are directed to place emphasis in these regulations on

> safety features and long-range, maintenance-free factors, <u>and requir[e] that all school buses shall be purchased on competitive bids as provided by Section 21.165 of this code</u>. (Emphasis added.)

Educ. Code §11.12.

Despite this unequivocal requirement, you suggest that several school districts effectively avoid competitive bidding by requesting that school buses be purchased pursuant to section 3.09 of article 601b. Section 3.09 provides the following:

> (a) The commission shall review the specifications and conditions of purchase of any supplies, materials, equipment, or services desired to be purchased.

> (b) If the commission finds that specifications and conditions of a purchase request have been drawn to describe a product which is proprietary to one vendor and does not include language which permits an equivalent product to be supplied, it shall require written justification of the requested specifications or conditions, signed by the agency head or the chairman of the governing body. For an institution of higher education, the written justification may be signed by the person designated by the president or governing body as purchasing officer for the institution. The written justification shall contain the following:

> (1) explanation of the need for the specifications;

> (2) the reason competing products are not satisfactory; and

> (3) other information requested by the commission.

> (c) If a resubmission with written justification is to be required by the commission, it shall notify the requesting state agency of that fact within 10 days

after the date of receipt of the purchase request.

(d) If the commission, after considering all factors, takes exception to the justifications, it shall purchase the supplies, materials, services, or equipment as requested and report the reasons for its exceptions to the agency head or the chairman of the governing body, the state auditor, the Legislative Budget board, and the governor.

(e) The commission shall issue an invitation to bid to vendors within 20 days after the date of receipt of the written justification required.

(f) The commission shall not delay processing a purchase requisition by submitting the specifications and conditions to the state auditor's office for comment or recommendation prior to issuing the invitation to bid to vendors.

V.T.C.S. art. 601b, §3.09. Article 601b does not define the phrase "proprietary to one vendor"; however, the commission has adopted a rule defining the term "proprietary":

Proprietary -- This term includes products and/or services manufactured or offered under exclusive rights derived from a trade name, patent, copyright, or other legally protected right. Product and/or services of one manufacturer will be considered proprietary if the product or the terms and conditions of the offer have a distinguishing feature or characteristic, required by the using agency's specifications which is not shared or provided by similar and competing (equivalent) products or services.

1 Tex. Admin. Code §113.2.

You inform us that the commission routinely requires written justification of school bus purchase specifications submitted pursuant to section 3.09. In the past, the commission has taken exception to justifications it

deemed insufficient, reported its exceptions to your office, the governor, and the Legislative Budget Board, and purchased the requested products pursuant to the mandate of section 3.09(d).[1]

## II.

The issue presented by your opinion request is the proper interpretation of the purchasing provisions of article 601b. When construing a statute, we are required to deliver

> an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.

Railroad Commission of Texas v. Miller, 434 S.W.2d 670, 672 (Tex. 1968). Whenever possible, legislative intent is determined from the language of the statute. Crimmins v. Lowry, 691 S.W.2d 582 (Tex. 1985). The entire statute, and not merely isolated portions of it, must be examined. State v. Terrell, 588 S.W.2d 784 (Tex. 1979). Where the intent of the legislature is apparent from the words of the statute, there is no need to consult extrinsic sources for evidence of legislative intent. Minton v. Frank, 545 S.W.2d 442 (Tex. 1976). Therefore, unless a statute is ambiguous, we are compelled to follow the clear language of the statute. Republicbank Dallas, N.A. v. Interkal, Inc., 691 S.W.2d 605 (Tex. 1985). In our opinion the language of both article 601b, V.T.C.S., and section 21.165 of the Education Code is plain and unambiguous.

## A.

An established principle of Texas jurisprudence holds that where a general provision of a statute conflicts with a special provision of the same statute, the special

---

1. For example, information submitted in connection with this opinion request shows that in the fiscal year 1985-86, the commission filed over 200 exceptions to school bus purchase requests submitted pursuant to section 3.09. The requests involved the purchase of approximately 600 school buses or bus components at a cost of several million dollars.

provision controls unless there is a clear indication that the general provision is to prevail. See State v. Balli, 190 S.W.2d 71, 86 (Tex. 1945), cert. denied, 328 U.S. 852 (1946); Chalin v. State, 645 S.W.2d 265, 272 (Tex. Crim. App. 1983). See also Gov't Code §311.026. Furthermore, when the law contains a general provision for all cases and a special provision for a particular class of cases, the general must yield to the specific insofar as the particular class is concerned. Sam Bassett Lumber Co. v. City of Houston, 198 S.W.2d 879, 881 (Tex. 1947); City of Houston v. Arney, 680 S.W.2d 867, 875 (Tex. App. - Houston [1st Dist.] 1984, no writ). The reason for this is that legislative intent is more clearly reflected in the enactment of a special provision than a general provision. Sam Bassett Lumber Co. v. City of Houston, supra. Thus, the provision governing the particular class is viewed as an exception to or a qualification on the general provision and both are given effect. Id.

## B.

Section 3.03 of article 601b is derived from former article 634a-1, V.T.C.S. Article 634a-1 required buses, bus bodies, tires and tubes to be purchased by the Board of Control for any school district receiving aid under any equalization act. It required such purchases to be made on the basis of competitive bids under rules and regulations promulgated by the Board of Control. Section 3.03 was intended to effect no substantive change in the method by which school districts acquire buses and bus components. See Bill Analysis to H.B. No. 1673, 66th Leg. (1979), on file in Legislative Reference Library; Testimony of Mr. John T. Potter (Asst. Dir., Texas Legislative Council) before House Comm. on State Affairs, 66th Leg. (April 9, 1979) (transcript available from House Staff Services).

Article 3 of article 601b establishes procedures which apply generally to all purchases made by the commission. Section 3.03 of the act, however, designates a discrete class of purchases which the commission is directed to make "as provided by Subchapter F, chapter 21, Texas Education Code." Accordingly, section 3.03 must be viewed as a qualification on the commission's general authority to purchase supplies, materials, and equipment pursuant to article 3. By its clear terms, section 3.03 requires us to consult the Education Code for guidance. In view of section 3.03, therefore, the commission must, in purchasing school buses, bus bodies, and bus chassis,

rely not on section 3.09  of article 601b, but  instead on the bidding requirements of the Education Code.

C.

Sections 21.161 through 21.182 comprise  subchapter F of chapter 21 of the Education Code.  Section 21.161 provides that all motor vehicles used  to transport school children, including  buses,  bus  bodies and  chassis (excluding passenger  cars), purchased  by  or for  school districts participating in  the Foundation School  Program must "be purchased by  and  through  the  [commission]," except as specifically  authorized by  subchapter F.  <u>See also</u> Educ.  Code  §21.180(a).  School buses  and  related equipment may be  purchased by  school districts  directly when an emergency  requires an  immediate purchase or  the items are  purchased  with  either donated  funds  or  the proceeds from  athletic  contests and  school  enterprises that are  not supported  by public  funds.  <u>Id.</u>  §§21.162; 21.164.

The commission is granted the power to  make rules or adopt regulations to effectuate the purposes of subchapter F.  <u>Id.</u> §21.168.  Neither subchapter F  nor the rules  of the commission make express  reference to section  3.09 of article 601b in the context of school  bus purchases.  <u>See</u> 1 Tex. Admin.  Code §113.13(1)  (school bus purchases  are made  by  the  commission as  a  result  of  competitive bidding and the receipt  of requisitions  from the  school districts).  Nor do they provide procedures  equivalent to the "proprietary  to  one  vendor"  purchasing  method  of section 3.09.  This suggests  to us that section  3.09 was not intended to  apply to  school bus  purchases.  We  are supported in this  view by sections  21.169 and 21.174  of the Education Code.  Section 21.169 states that compliance with the purchase and sale provisions of subchapter F is a condition precedent  to  participation in  the  Foundation School  Fund  program.  Section  21.174(b)(1),  moreover, requires  local  district  school  boards  to  requisition school buses and  supplies from  the commission in  accordance with subchapter F.  Therefore, we  conclude that the legislature  intended  school  bus  purchases  for  school districts to be made by the commission  solely pursuant to the provisions  of  subchapter  F of chapter  21  of  the Education Code and rules or regulations  promulgated under authority granted by subchapter F.

Subchapter .F  of  chapter 21  of  the Education  Code is substantially  derived  from  former  article  634(B), V.T.C.S., which required the Board of  Control to purchase

school buses, bus bodies, tires and tubes for school districts participating in the Foundation School Program on the basis of competitive bids. Section 21.165 reflects the substance of article 634(B). When the legislature reenacts a statute without material change, it is presumed the legislature knew and adopted interpretations placed on the original statute and intended the new enactment to receive the same construction. _First Employees Insurance Co. v. Skinner_, 646 S.W.2d 170 (Tex. 1983). We therefore find it significant that twenty years prior to the re-codification of article 634(B), this office construed its language to prohibit the kind of school bus purchasing practices you inquire about:

> Article 634(B) expressly provides that new school buses purchased by the State Board of Control upon proper requisition from school districts of this State 'shall be purchased on competitive bids.' The statute also specifically authorizes school districts to describe in their requisition 'special equipment required to guarantee adequate safety and comfort of school children' where needed to meet certain climatic and road conditions, and provides that the requisition 'shall include therein a _general_ description of the article desired.' These express provisions authorize only a 'general description' of the bus specifications desired by the school district. _School districts are not empowered thereunder to insist that the bus be a product of a particular manufacturer. The act requires that the State Board purchase requisitioned buses on 'competitive bids', and therefore requires that the Board invite bids generally on buses that meet the general description of the bus desired_. As stated in Attorney General's Opinion V-938 (1949), the spirit and purpose of Article 634(B) as a whole is to require that school districts purchase its buses through the one agency, the State Board of Control on a competitive bid basis to the end that such districts shall realize full value for the money they acquire through Foundation School Fund participation. The Legislature's primary concern was that costs of such school bus transportation be minimized by

> purchase of necessary bus equipment at the lowest cost.
>
> Accordingly, it is our opinion that a school district is not authorized to list in its requisition for the purchase of a school bus a binding specification that the bus be the product of a particular manufacturer. Further, a school district may not legally refuse to accept the bus purchased by the State Board of Control for it on requisition, providing it meets all other specifications. (First emphasis in original, remaining emphasis added.)

Attorney General Opinion V-1511, at 6, 7 (1949). It must be noted that the school bus purchase requisitions submitted pursuant to section 3.09 do not designate a particular manufacturer. Rather, the purchase specifications are structured so that only a particular manufacturer can meet the specifications. It cannot be seriously argued that this practice is any less restrictive of competition than the practice disapproved in Attorney General Opinion V-1511, for both effectively eliminate all competition between different manufacturers of school bus equipment. Consequently, we believe the teachings of Attorney General Opinion V-1511 are especially relevant here. See also Cassel v. Board of Education, Common School District No. 13, Southampton, 220 N.Y.S.2d 262 (N.Y. Sup. Ct. 1961) (school board which sought to purchase a school bus could not build specifications around one make of vehicle). Significant, too, is the absence of any subsequent legislative enactment indicating disapproval of the conclusion reached in Attorney General Opinion V-1511 or authorizing a change in the purchasing practices mandated by subchapter F of the Education Code. See generally Educ. Code §21.82 (lease-purchase of school buses).

It might be argued on the school districts' behalf that because rules adopted by the commission incorporate the proprietary purchase procedure of section 3.09, these constitute "such rules and regulations" as Education Code section 21.165(b) authorizes the commission to adopt for school bus purchases.

Requisition processing procedures are set forth at 1 Tex. Admin. Code §113.3. Subsection (b) of that provision establishes procedures for purchase specifications that the commission finds are "proprietary to one vendor and do

not contain language permitting an equivalent product to be supplied." This rule merely interprets and applies section 3.09 of article 601b, which is referred to throughout the provision. It is not, in our opinion, the product of an exercise of legislative power by the commission, but stands merely as an "interpretive rule" of the commission. See First Federal Savings and Loan Association v. Vandygriff, 639 S.W.2d 492, 498-499 (Tex. App. - Austin 1982, writ dism'd). The rule was not promulgated pursuant to the authority delegated by the Education Code, and we do not think the legislature intended to authorize school districts to accomplish by finesse what could not be accomplished directly -- i.e., the purchase of school buses pursuant to section 3.09.

D.

Although the unambiguous language of article 601b and the Education Code provides considerable support for our conclusion, there is another reason why section 3.09 of article 601b should not apply to school bus purchases. As we observed earlier, article 3 of article 601b applies generally to purchases made by or for state agencies. Section 3.01(a) of the act provides that the "commission shall purchase, lease, rent, or otherwise acquire all supplies, materials, services, and equipment for all state agencies" except for certain acquisitions made for libraries operated by institutions of higher education. The act defines "state agency" to mean:

> (A) any department, commission, board, office, or other agency in the executive branch of state government created by the constitution or a statute of this state;

> (B) the Supreme Court of Texas, the Court of Criminal Appeals of Texas, a court of civil appeals, or the Texas Civil Judicial Council; or

> (C) a university system or an institution of higher education as defined in Section 61.003, Texas Education Code, as amended, other than a public junior college.

V.T.C.S. art. 601b, §1.02(2). A school district falls within none of the designated classes of governmental entities or institutions subject generally to the act.

### E.

To summarize, we find no ambiguity in the language of either article 601b or subchapter F of chapter 21 of the Education Code. By its plain terms, section 3.03 of article 601b requires school buses to be purchased by the commission pursuant to the strictures of subchapter F. Subchapter F neither incorporates section 3.09 of article 601b nor provides procedures equivalent to the "proprietary to one vendor" purchasing method of section 3.09. Further, the definition of "state agency" in article 601b suggests that the general purchasing provisions of the act, particularly section 3.09, were not intended to apply to school bus purchases made by the commission for school districts.

## S U M M A R Y

The purchasing provisions of article 601b, V.T.C.S., do not apply to the purchase of school buses and bus chassis by the State Purchasing and General Services Commission. Such purchases are governed by subchapter F of chapter 21 of the Texas Education Code and rules or regulations promulgated pursuant to authority granted by subchapter F.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Rick Gilpin
Assistant Attorney General